**WEATHERLY INDEPENDENT SCHOOL DIST. et al. v. HUGHES et al.**

No. 3590.

Court of Civil Appeals of Texas. Amarillo.

July 8, 1931.

Williams & Bell, of Childress, and W. A. McIntosh, of Gilmer, for appellants.

Small & Brown, of Wellington, for appellees.

RANDOLPH, J.

This suit was brought by appellees as plaintiffs against appellants as defendants, and the parties will hereinafter be styled as in the trial court. The defendant Weatherly independent school district is sued as a school incorporation, and the other defendants are sued as its trustees.

The plaintiffs' petition seeks an injunction restraining the collection of taxes by said defendants upon 18,237 acres of land belonging to the plaintiffs in Hall county, Tex. The original petition was presented to the judge of the one hundredth district on January 28, 1930, at which time a temporary restraining order was granted. The case was tried on its merits before the court without a jury on September 25, 1930, and the court permanently enjoined the defendants from collecting taxes on said land at a higher valuation than $5 per acre, a total tax of $969.18, which tax had been tendered into court by the plaintiffs.

Up to May 6, 1929, the lands of the plaintiffs were located in Weatherly consolidated common school district No. 19. On that day the county board of trustees of Hall county held a meeting and attempted to incorporate the territory comprising the common school district into the independent district, under the authority conferred by chapter 84, Acts First Called Session, 40th Legislature (1927) see Vernon's Ann. Civ. St. art. 2742b. An election for trustees in the said independent district was held on May 22, 1929, and the result of said election was declared on June 23, 1929. Thereafter the district attempted to function as an independent school district.

The lands of plaintiffs were rendered in Hall county for taxes for the year 1929 in the usual manner. The rendition sheet, when delivered to the tax assessor, did not have the valuation of the lands on it. The assessor himself placed a valuation of $5 per acre on each tract in the district, and this valuation was approved by the commissioners' court as a board of equalization on June 17, 1929, after equalizing the tax renditions for the year 1929, including a tax of $1 on the $100 valuation of all taxable property located in the Weatherly district. In making up the taxes for Hall county, the school tax for the Weatherly district was not carried forward into the roll. The Weatherly district caused a tax assessor to be appointed, and it appears that he rendered the plaintiffs' land for $12 per acre and that the board of equalization appointed by the school board of the Weatherly independent district lowered this rendition to

$10 per acre, notwithstanding the fact that the commissioners' court had placed a valuation of $5 per acre on the land for both county and school purposes, levied the tax, and ordered the collector to place the same on the tax rolls for the year 1929 at that value. This order was made on July 2, 1929. When the tax became due and before February 1, 1930, the agent of plaintiffs tendered to J. H. Smith, who was the collector for both the county and the common school district, the amount of taxes due on the county valuation and the rate fixed by the commissioners' court, which was the same rate fixed by the school board. This tender was refused. At this time J. H. Smith had in his possession what he termed a tax roll for the Weatherly independent school district. Smith testified that there was nothing with this tax roll to show that it had ever been approved by the board of trustees of any school district or by any board of equalization; that is, the roll under which he attempted to collect $1,820.50 from the plaintiffs. On February 24th, it appears that the tax assessor certified to the roll and the board of equalization approved same and later, on the 11th of April, 1930, the school board approved the roll; this was after taxes had become delinquent and the tender of taxes had been made.

■ On February 12, 1930, the law under which the defendant district attempted to incorporate was declared unconstitutional. Pyote Ind. School Dist. v. Dyer (Tex. Com. App.) 24 S.W.(2d) 37. The Forty-First Legislature (1929), by H. B. 216, chapter 50, Acts Reg. Session (Vernon's Ann. Civ. St. art. 2742d), attempted to validate all districts created under the Acts of the Fortieth Legislature, but this act did not and could not validate the appellant district, as it was not then in existence.

By S. B. 19, chapter 5, Acts of the 5th Called Session of the 41st Legislature of Texas (1930), page 117 (Vernon's Ann. Civ. St. art. 2742j), the Legislature validated the district here in question, its organization, and acts of its officers, including the levying of taxes. It was held in the case of Pyote Independent School District v. Dyer (Tex. Com. App.) 34 S.W.(2d) 578, that the act did validate all such districts and that the act so validating the districts related back to its inception. However, the questions raised by virtue of this validation, as discussed in that case, as to the collection of the taxes under the levy by the commissioners' court of Hall county, and the attempted levy by the trustees of the independent school district, need not be discussed here, as the judgment of the trial court must be sustained upon another ground which renders such discussion unnecessary.

■ The trial judge concluded upon the facts found by him that the valuation placed upon the land by the assessor and board of equalization of the independent school district was a discrimination as against the plaintiffs. If this conclusion is supported by the evidence, the trial court's judgment must be affirmed, as that court also found the true valuation of the land for taxation purposes.

The record, in our view of the case, shows fully a discrimination in the independent school district's valuation, in this: The valuation placed on plaintiffs' land by the independent school district board was $10 per acre and the land was taxed 100 per cent. It appears clear from the evidence before the trial court that the plaintiffs' land was taxed upon such 100 per cent. valuation and that the lands of the witness who did testify as to the valuation of his land were taxed at much less than 50 per cent. of their value.

House, a member of the board of trustees of the independent school district, testified that the major portion of his land was of the value of $50 per acre and that one block was taxed at $8 per acre and other parts of his $50 land at $20 per acre, all of such taxable valuation being considerably less than 50 per cent. of its actual value.

The trial court placed the taxable valuation of plaintiffs' land at $5 per acre and the board of trustees valued it for taxes at $10 per acre; the $10 per acre, as stated, being the actual value of plaintiffs' land. It will therefore be seen that as between the valuation of plaintiffs' land and that of House, a member of the board of trustees for the school district, there is such a wide divergence as on the face of the evidence shows a discrimination against the plaintiffs.

■ The levying of a tax upon the plaintiffs' land by which they are discriminated against is a taking of their property without due process of law. This amounts to legal fraud and justifies the issuance of an injunction against the collection of such illegal tax. Such a discrimination violates plaintiffs' right to have the tax uniformly levied against their property, and equal with those of other tax payers.

■ Imposition of a tax upon citizens to meet a debt incurred in an illegal attempt to incorporate is, in effect, a taking of property without due process of law. Ewing v. Commissioners' Court, 83 Tex. 663, 19 S. W. 280.

Where property of individuals in a county is assessed at two-thirds of its real value, deliberately, and the intangible assets of a railroad company at full value, such assessment is violative of Federal Constitutional Amendment 14, § 1, as denying to the railroad company the equal protection of the constitution and laws of the state. Lively v. Mo., etc., Ry. Co., 102 Tex. 545, 120 S. W. 852, 856.

Taxes are "equal and uniform" within the Constitution when no person or class of persons in the territory taxed, is taxed at a higher rate than others in the same district upon the same values or thing and when the objects of taxes are the same by whomsoever owned or whatever they be. Norris v. City of Waco, 57 Tex. 685; Adair v. Robinson, 6 Tex. Civ. App. 275, 25 S. W. 734, writ denied. "The standard of uniformity prescribed by the Constitution being the value of the property, taxation cannot be in the same proportion to the value of the property, unless the value of all property is ascertained by the same standard." Lively v. Mo., etc., Ry. Co., supra. "The intention with which the acts were done is of no consequence. Such deliberate action on the part of officers charged with the enforcement of the law must be held to be the act of the state, and the appellee was entitled to relief against the enforcement of the excessive assessment." Id.

The rule laid down that taxes shall be equal and uniform applies to municipal as well as state taxes. City of Austin v. Austin Gas-Light, etc., Co., 69 Tex. 180, 187, 7 S. W. 200.

Being of the opinion that the evidence sustains the trial court's judgment upon the ground of discrimination against the plaintiffs, we affirm the judgment of the trial court.

HALL, C. J., not sitting.