L. LANGLAY ET AL. v. N. J. SMITH ET AL.

Decided March 12, 1910.

**Taxation—Unequal Valuation.**

The Constitution requires equality of taxation; therefore whether property is valued for taxation at its full market value or at only a certain percent of said value the same rule must be applied as to the property of all tax payers. In a suit to enjoin the collection of taxes upon national bank stock upon the ground that the value placed upon it by the Board of Equalization was proportionately greater than that placed on other property by said Board, petition considered and held to state a good cause of action.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*Chas. L. Black* and *Morrow & Smithdeal,* for appellants.—The court erred in sustaining the general demurrer to plaintiffs' petition

because the matters and facts therein set up entitled the plaintiffs to the relief prayed for. First Nat'l Bank of Lampasas v. Lampasas, 33 Texas Civ. App., 530; Lively v. Missouri, K. & T. Ry. Co., 102 Texas, 545; Ex parte Ft. Smith & Van Buren Bridge Co., 36 S. W., 1061; Cummings v. National Bank, 101 U. S., 153; Boyer v. Boyer, 113 U. S., 694.

*N. J. Smith* and *Ivy, Hill & Greenwood,* for appellees.—When a petition seeks an injunction to prevent the collection of a tax upon the ground of discrimination in the assessment and equalization of taxes, the plaintiff must show that his property has been assessed at more than its fair cash market value. The fact that his neighbor's property is assessed at a less percentage of its true or actual value than his own does not entitle plaintiff to recover. Especially is this true when the allegations in the petition fail to show collusion between and actual fraud on part of the tax officials. Engelke v. Schlenker, 75 Texas, 559; People v. Lots in City of Ashley, 13 N. E., 556; Alexander v. Thomas, 12 So., 708; McCurdy v. Prugh, 55 N. E., 154; Duck v. Peeler, 74 Texas, 268; Wagoner v. Loomis, 37 Ohio, 571; New York & Chicago G. & S. Ex. v. Gleason, 13 N. E., 204; Carroll v. Alsup, 64 S. W., 199; Keokuk & H. Bridge Co. v. Bertschi, 44 N. E., 207; Chicago, B. & Q. Ry. Co. v. Babcock, 27 Sup. Ct. Rep., 326; Albuquerque Bank v. Perea, 147 U. S., 87; Penobscot, C. F. Co. v. Inhabitants of Town of Bradley, 59 Atl., 83; City of Lowell, Mass., v. County Commissioners of Middlesex, 25 N. E., 470; Johnson v. Holland, 17 Texas Civ. App., 210; Coxe Bros. Co. v. Saloman, 59 N. E., 422; Ricketts v. Crewdson, 79 Pac., 1042.

RAINEY, CHIEF JUSTICE.—The appellants brought this suit against the officers of Hill County to enjoin the collection of certain taxes assessed against the stock owned by them in various national banks in Hill County for the year 1908. A general demurrer to the petition was sustained, and plaintiffs appeal.

The petition, after making averments as to names, places, amount of stock each owned, its value, etc., alleged, in effect, that said stock had been listed with the tax assessor of Hill County with a statement of the assets of said banks, etc.; that the Board of Equalization, without notice, valued said property, when, if notice had been given, plaintiffs would have appeared and protested. Said petition then proceeds:

7. "The plaintiffs further show that the said Board of Equalization imposed a tax on the surplus and profits of said banks, and in making the assessment aforesaid assessed said stock at eighty-five percent of its book value, and in reaching a conclusion as to its book value they added to the capital stock of said banks the value of its surplus and profits, and made said assessment upon said surplus and profits, and said assessment by reason thereof is void and without effect.

8. "The plaintiffs show to the court that they are informed and believe, and charge the fact to be, that on the first day of January, 1908, and at the time of the action of said Board of Equalization hereinbefore referred to, and for long time prior thereto, there existed in the State of Texas, and especially in Hill County, an established

and general custom to assess property for taxation at less than its full and fair market value, and that said Board of Equalization recognized and acted upon and in accord with said custom in equalizing property for taxation in Hill county in the year 1908, with reference to all property except the property consisting of the assets and stock of said banks. That pursuant to said custom said Board of Equalization, acting in the year 1908, as aforesaid, fixed and established the value of real estate throughout Hill County at about forty-one percent of its full and fair market value, and assessed and fixed the value of personal property, including other monied capital similarly invested in the hands of individual citizens, at about forty-one percent of its full and fair market value, with the exception of the said real estate and personal property of the plaintiffs, and that the said Board of Equalization at the time aforesaid, with full knowledge of said existing custom, and in recognition of the same, and with the design and intention to follow the same, listed and equalized real estate and personal property other than that of the said national banks at, to wit: the sum of forty-one percent of its full and fair market value, and intentionally, and pursuant to a definite system, with the design of imposing an unequal burden of taxation on plaintiffs, they arbitrarily fixed and assessed the value of the bank stock of the plaintiffs and each of them at eighty-five percent of its book value, being all of its full and fair market value. That the action of said Board of Equalization, in so fixing the value of other property at forty-one percent of its full and fair market value and in fixing the value of plaintiffs' bank stock at its full and fair market value, done in pursuance of said system intentionally followed as aforesaid, was an illegal and arbitrary discrimination against the plaintiffs, and constituted a legal fraud upon them, and was not, in fact, an equalization of their property with other property, but an intentional, systematical and arbitrary assessment of their property at more than double the proportionate value at which said Commissioners' Court, acting as said Board of Equalization, fixed the value of property, as aforesaid, belonging to other persons, as aforesaid.

9. "Plaintiffs show to the court that the rate of taxation in Hill County for the current year 1908, as fixed by the Commissioners' Court of said county, is 22 11/12 cents on the hundred dollars State tax, and 35 cents on the hundred dollars county tax, aggregating 57 11/12 cents on the hundred dollars.

"That if their property had been assessed according to the custom and system which was pursued intentionally by said Board of Equalization in equalizing the value of other property, the value of said stock would only have been fixed at not more than forty-one percent of its book value, and if other property had been assessed at the same rate of value as plaintiffs' was, the rate of tax would have been lower, to wit: about one-half the county tax above set out. That the plaintiffs give hereinbelow a statement showing the value at which said board assessed said stock; the amount of tax on said assessment; the tax which should have been assessed against said stock; and the excess over the tax which should have been assessed, said statement being as follows, to wit:

| Name. | Assessed Value. | Tax on said asses'd value. | Tax which should be Assessed. | Excess. |
|---|---|---|---|---|
| 1st N. Bk. Whitney | $31,875.00 | $184.60 | $ 91.35 | $ 93.25 |
| Cit. N. Bk | 42,500.00 | 346.14 | 116.00 | 230.14 |
| 1st. N. Bk. Blum | 36,465.00 | 211.29 | 99.22 | 112.07 |
| 1st. N. Bk. Itasca | 80,750.00 | 467.67 | 220.40 | 247.27 |
| Itasca N. Bk. | 31,875.00 | 184.60 | 91.35 | 93.25 |
| Sturgis N. Bk. Hillsboro | 119,085.00 | 556.40 | 271.67 | 284.63 |
| Cit. N. Bk. Hillsboro | 75,470.69 | 440.17 | 206.01 | 234.16 |
| Farmers' N. Bk. | 70,095.25 | 398.96 | 170.43 | 228.53 |

"That said excess over the amount of the tax which should have been assessed as shown hereinabove is an arbitrary, illegal and fraudulent tax against the property of these plaintiffs by reason of the premises and allegations hereinabove set out. That the sum named hereinabove which should have been assessed and taxed against these plaintiffs for the year 1908 is the fair proportion of these plaintiffs of the taxes due and assessable against their property for the year 1908, and that by assessing said property at said amount same will be equalized with other property as aforesaid assessed throughout the State of Texas, and particularly in Hill County.

"That, notwithstanding the facts aforesaid, the said B. L. Hodge, tax collector as aforesaid, acting under the direction of the other defendants herein, is insisting upon the payment of said tax so illegally levied and assessed and equalized, and is threatening to levy upon the property of the plaintiffs to collect the same.

10. "Plaintiffs further show to the court that, at the time the assets of said banks were listed as aforesaid, the officers of the following banks rendered the stock. of said banks at less than its book value, to wit, the amounts set out below, viz.: the stock of the following named banks was rendered as follows, and was raised by said board as follows:

| Name of Bank. | Value rendered at per share. | Value raised to per share. |
|---|---|---|
| Itasca Nat. Bank | $ 73.33 | $106.02 |
| Farmers' N. Bank | 88.81 | 140.19 |
| Sturgis N. Bank | 78.10 | 119.10 |
| Cit. N. Bank Hillsboro | 118.39 | 150.94 |
| 1st N. Bank Itasca | 100.00 | 161.50 |

"That if the said Commissioners' Court had acted fairly and legally with reference to said banks, and had not pursued said illegal system and discriminated against them and against the stockholders thereof, they would have reduced said renditions of said banks when they sat as a Board of Equalization to not exceeding forty-one per cent of the book value of said banks. That said Board of Equalization, acting pursuant to said system as aforesaid and with the intent of discriminating against the stockholders of said banks, not only failed to reduce said renditions to an amount which would have equalized them with other species of property, but without giving any

notice to the stockholders of said banks or to any of said stockholders of their intention to raise the said assessment and rendition, the said Commissioners' Court arbitrarily raised the value of said property as assessed for taxes to the sums hereinbefore stated, and in so doing they acted illegally and arbitrarily and contrary to law, and said assessments so made are, for the reasons stated, illegal and void. That if said notice had been given plaintiffs would have appeared and protested against said assessments.

"Plaintiffs show that under the laws of this State it is the duty of the State Tax Board to reduce the rate of taxation fixed by law in proportion to the value of property assessed for taxation, and by reason of said law and in making the assessment of plaintiffs' property at a greater proportion of its value than that at which other like property is assessed increases the burden of plaintiffs and on their property by raising the rate greater than it would be if other property was assessed at as great a proportionate value as plaintiffs' property, and said action of the defendants in fixing the assessment of other personal property at a rate less than its full value increases the burden on plaintiffs and their property for the reasons as aforesaid, in that the rate under the law is automatically adjusted in accord with the assessed value and the requirements of revenue.

"Plaintiffs further say that the acts of the defendants, in each of the subdivisions of this petition set out, deprive the plaintiffs of the benefit of the equal protection with other citizens of the law of this State and of the United States, and deprives them of the benefit of the laws and statutes of this State and of the United States with reference to the assessment and taxation of national bank stock, and deprives these plaintiffs of a property without due process of law, contrary to the laws and Constitution of the United States and the Fourteenth Amendment of said Constitution of the United States and other amendments thereof.

"Plaintiffs further show that, since this suit was filed, they have paid to the tax collector of Hill County all of the taxes which they are justly due upon their property as aforesaid, each of the plaintiffs paying said taxes in proportion to the number of shares of stock held by him, the aggregate of said taxes so paid being the amount alleged to be owing and which should have been assessed against the stockholders of the several plaintiffs as set out in subdivision 9 of this petition; and the plaintiffs say that in making said payments they desire to pay all the taxes which is justly and legally chargeable against them respectively, and that if any mistake be found in the calculation they here tender any additional amount that may be found to be due."

11. "The plaintiffs show to the court that, owing to the attitude and intention of the defendants to insist upon the payment and collection of said illegal taxes as aforesaid and hereinabove set out, the plaintiffs are threatened with a levy upon their property and with a multiplicity of suits harassing them with interminable litigation, and that in seeking their remedy against the defendants the issues presented by them involve the determination of the identical questions of law and fact, and that in the kind of relief demanded by them there is an identity, and that by invoking the equitable jurisdiction

of this court a multiplicity of suits and vexatious litigation will be avoided and all the issues determining the rights of plaintiffs and defendants in one suit. And plaintiffs show that the aforesaid threatened action of the defendants will cause the plaintiffs irreparable injury and deprive them of the equal protection of the law and deprive them of their property without due process of law.

"Plaintiffs show that the officers of the First National Bank of Whitney, the Citizens National Bank of Whitney, the First National Bank of Blum and the Itasca National Bank appeared before said Board of Equalization and protested against the action of said Board of Equalization as hereinabove set out, and that said action was taken over and against the said protest of the officers of the other banks hereinabove named.

"Wherefore plaintiffs pray that on a hearing hereof they have judgment against the said defendants enjoining them from the collection of said excessive taxes and cancelling said illegal assessments against them and each of them, etc."

The contention of appellees is that the petition shows on its face that the appellants' property was not assessed at more than its reasonable market value, but assessed at only eighty-five percent of said value; therefore plaintiffs were not entitled to relief. This was evidently the view taken by the learned trial judge and prompted his action in sustaining the general demurrer.

Appellees cite and quote an array of authorities, principally from othes States, which sustain the view of the proposition. In the case of Engelke v. Schlenker, 75 Texas, 559, Judge Henry, delivering the opinion of the court, adopted the view contended for by appellees, but in the case of Lively v. Missouri, K. & T. Ry. Company, 102 Texas, 545, the same court, speaking through Judge Brown, pronounces the statement of Judge Henry as dictum, and proceeded to hold, in effect, that where there was a discrimination, and property of one was assessed at a higher valuation than that of other citizens, thereby denying to the party the equality of taxation required by the Constitution, the party was entitled to relief. We quote from the opinion in the Lively case as follows: "The wrong which was inflicted upon the appellee was not in requiring it to pay taxes upon the full value of its property, but in denying to it the equality of taxation secured by the Constitution, which equality of taxation necessarily depends upon uniformity of assessment. In administering the remedy the court must take the course which is most practical to secure uniformity of valuation of the property to be taxed. This may be done either by increasing the assessment of each property owner in the county to its full value and to collect from each the taxes upon this full value, or to reduce the assessment of the intangible assets of the railroad company to 66 2/3 percent on the $100 of its assessed value. The court will adopt that plan which is most feasible and calculated to secure justice to the parties. The same question arose in the case of Taylor v. Louisville & N. R. R. Co., 88 Fed., 364, 31 C. C. A., 537. The learned judge who presided at the trial of that case recognized the difficulty and solved it, announcing his conclusion in the following forcible and clear language: 'How is it to be remedied?

It is said on behalf of the defendants that the only method consistent with the Constitution is by raising the assessments of the real and personal property. This is no remedy at all. It has been suggested (but we can not regard the suggestion as a serious one) that the railroad companies of the State should go before the taxing authorities of each county, and, after notifying each taxpayer, attempt to secure an increase in the total tax assessment of the real and personal property of the State from $312,000,000 to $416,000,000. The absolute futility of such a course, the enormous expense, and the length of time necessary in attempting to follow it, need no comment. . . . Therefore, to enjoin the enforcement of the prescribed method of assessment as to one species of property when there is a departure from it as to all others, if the injunction secures uniformity as to all, is not so great a violation of the method really prescribed as that involved in a continuance of the existing conditions, and the denial of relief to the injured taxpayer. The court is placed in a dilemma from which it can only escape by taking that path which, while it involves a nominal departure from the letter of the law, does injury to no one and secures that uniformity of tax burden which was the sole end of the Constitution. To hold otherwise is to make the restrictions of the Constitution instruments for defeating the very purpose they were intended to subserve. It is to stick in the bark, and to be blind to the substance of things. It is to sacrifice justice to its incident.' "

The Lively case, *supra,* is precisely in point, and the principle therein announced applies to and governs this case. The petition in this case alleges a discrimination and inequality of taxation as to the property of plaintiffs in that their property was assessed at eighty-five percent valuation while the property of all other citizens was assessed at forty-one percent valuation, and the court erred in sustaining the general demurrer thereto.

In justice to the trial judge we deem it proper to remark that the judgment in this case was rendered before the decision in the Lively case, and he evidently followed the opinion in the case of Engelke v. Schlenker, 75 Texas, 559. The judgment is reversed and cause remanded.

*Reversed and remanded.*