### GARZA LAND & CATTLE CO. v. REDWINE INDEPENDENT SCHOOL DIST. et al.
### (No. 2621.)

(Court of Civil Appeals of Texas. Amarillo. March 3, 1926. Rehearing Denied March 24, 1926.)

1. **Schools and school districts** ⬅99—**Assessment of property by school district in violation of statutes at materially higher percentage of value than percentage at which property of majority of owners was assessed held unconstitutional (Const. art. 8, § 1; 20 Gammel's Laws, p. 216, § 12; Vernon's Sayles' Ann. Civ. St. 1914, arts. 7504, 7530, 7564; Rev. St. 1925, arts. 7146, 7174, 7206).**

Assessment by Redwine Independent School District, under Gammel's Laws, vol. 20, p. 216, § 12, of property of plaintiff at materially higher percentage of its value than percentage at which property of great majority of owners in district was assessed, pursuant to system at variance with provisions of Vernon's Sayles' Ann. Civ. St. 1914, arts. 7504, 7530, 7564 (Rev. St. 1925, arts. 7146, 7174, 7206), *held* not compliance with Const. art. 8, § 1, requiring taxation to be "equal and uniform," and "all property to be taxed in proportion to its value."

**2. Taxation ⬥⟶44—Constitutional requirement of equality and proportion to value applies to municipal subdivisions as well as state (Const. art. 8, § 1).**

Const. art. 8, § 1, providing that taxation shall be equal and uniform, and that all property shall be taxed in proportion to its value, applies to municipal subdivisions as well as state.

**3. Schools and school districts ⬥⟶99—That taxpayer, whose property was assessed at higher valuation than others, would pay on less than full value, does not make taxes assessed "equal and uniform," nor land "taxed in proportion to its value" within Const.' art. 8, § 1.**

That plaintiff, whose property was assessed by school district at materially higher proportion of its value than that at which property of great majority of owners in district was assessed, would pay on less than full value, does not make taxes "equal and uniform," nor property "taxed in proportion to its value," within Const. art. 8, § 1.

**4. Schools and school districts ⬥⟶103(1)—Action of trustees, as board of equalization, in assessing plaintiff's property at higher value than others held not final, though they acted in good faith and exercised best judgment.**

Action of trustees of school district, acting as board of equalization, in assessing plaintiff's property at materially higher percentage of value than that at which property of great majority of owners in district was assessed, *held* not final, but subject to review by courts, though they acted in good faith and exercised their best judgment.

**5. Schools and school districts ⬥⟶105.**

School district was not required to accept tender of less than amount of taxes due in full settlement. ·

Appeal from District Court, Lynn County; Gordon B. McGuire, Judge.

Suit by the Garza Land & Cattle Company against the Redwine Independent School District and others, who filed a cross-action. Judgment for defendants on cross-action, and plaintiff appeals. Reversed and remanded.

Robert H. Bean and Bean & Klett, all of Lubbock, for appellant.

Lockhart & Garrard, of Lubbock, for appellees.

JACKSON, J.  Appellant, a Texas corporation, instituted this suit in the district court of Lynn county, Tex., against appellees, Redwine independent school district, a body corporate, its officers and trustees, to restrain it and them from the collection of a part of the taxes assessed against appellant's property for the year 1924, located in said school district.

Appellant alleged that the Redwine independent school district was created by an act of the Legislature of this state, and con-

tained 39 sections of land, of which it owned 10¼ sections; that the district is 9 miles in length east and west, and is 4 miles wide north and south, except near the center, where for 3 miles of its length it is 5 miles in width; that the 10¼ sections of land owned by appellant are in the eastern end of the district, from 4 to 8 miles from the schoolhouse, and most of it is very rough, unimproved, and fit and used only for grazing purposes; that its 10¼ sections lie in a body, and are used as a ranch; and as a whole are not now and were not on January 1, 1924, of a cash market value to exceed $8.35 per acre; that the central and western parts of the district are mostly smooth agricultural land, with about 75 per cent. thereof in cultivation, with valuable improvements on almost every quarter section; that the board of trustees of said district levied and caused to be assessed sufficient taxes for the year 1924 for the maintenance of public schools in said district, and caused the same to be valued for the purposes of taxation, and in doing so the trustees and its assessor valued appellant's 10¼ sections at $8.35 per acre, which was about its cash market value taken as a whole; that appellees assessed and valued practically all the improved farm land in the central and western parts of the district at a flat valuation of $12 per acre, including the improvements, which value was only about one-fourth of the market value of the farm lands, and about one-third of the cash market value of said lands as a whole; that, after these values had been placed on the lands of appellant, it appeared before the board of trustees, acting as a board of equalization, and protested the high value placed on its lands as compared to the low value placed on the lands of the other residents of the district, and requested that its lands be valued for taxation in proportion to the tax values placed on the other property of the district, but the trustees and officers of the district adopted a system for valuing the property of the residents and other owners of property in the district at about one-third its actual cash market value, regardless of its actual or relative value, while appellant's property was valued at about its actual cash market value, which was illegal, arbitrary, and fraudulent, and done in pursuance of a definite system which was intended to and did have the effect of imposing unequal and unjust taxes on the property of appellant, and operated as an unfair discrimination against it, and deprived it of the equal and uniform assessment of its property in proportion to its value to which it is entitled under the Constitution and laws of the state and the United States; that the appellees fraudulently refused to reduce the value of its properties in proportion to the values placed on the other properties in the district for taxation; that the appellees fixed the total

⬥⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

value of appellant's properties at $55,535, which is about its actual value, but that its value as compared with other properties in the district was and is about $18,512; that the taxes due by appellant on its real estate in the district are about $185.12, and the taxes on its personal property as assessed and levied are $42, and it is and at all times has been ready to pay said amount, and has tendered to the tax collector and officers of the school district said amount, but that the tax collector and officers refused to accept the money and issue a full receipt for appellant's taxes, and that it here tenders into court said sums of money, and is ready and anxious to pay such amount as the court finds is lawfully due based on the proportional value of its property compared with the value of other property in the district; that the tax collector of Lynn county is collecting the taxes for said district, and has possession of its tax rolls, and he and the trustees are asserting a lien against its property, and are threatening to and will demand and collect from appellant $370.25 in excess of the amount of taxes which appellant should pay unless restrained from so doing, and it has no adequate remedy at law.

It prays that a temporary order be issued restraining the appellees from collecting or attempting to collect as taxes any sum in excess of about $227.32, and that on final hearing the court ascertain the legal amount due by appellant, and appellees be perpetually enjoined from collecting or attempting to collect any sum of money as taxes for the year 1924 in excess of the amount the court finds appellant lawfully owes. It offers to do equity and prays for all relief to which it may be entitled in law or in equity.

The appellees answered by general demurrer, special exceptions, verified general denial, and specially pleaded that they were not guilty of discrimination against appellant; that the valuations were fixed after hearing testimony, and deliberating, and they arrived at the values at which the property was assessed without any corrupt or dishonest motive, and hence, their action is not subject to revision by the courts; that appellant's land was reasonably worth $15 to $20 per acre, and the value placed thereon by appellees was the same as that placed upon other property of a like character.

Appellees by cross-action sought to recover against appellant the sum of $555.35 for taxes for the year 1924 with the penalty of 10 per cent. on account of appellant's failure to pay the taxes before February 1, 1925, and for interest from said date at the rate of 6 per cent. per annum, and asked for a foreclosure of its tax lien against the property of appellant, and for order of sale, etc.

In response to special issues submitted by the court, the jury found that the reasonable market value on January 1, 1924, of appellant's 10¼ sections of land was $14 per acre;

that the reasonable market value of all other land in the Redwine independent school district on said date was $28 per acre, and that the trustees of the district exercised their best judgment and good faith in fixing the values of the property in the district for the year 1924.

On the answers of the jury to these issues and some other special issues which do not affect our disposition of the case, the court entered judgment that the Garza Land & Cattle Company take nothing by reason of its suit, and the temporary injunction theretofore granted be dissolved, and that the Redwine independent school district recover the sum of $555.35 on its cross-action, with interest at the rate of 6 per cent. per annum, with a foreclosure of its tax lien, and the property be sold, etc.

In addition to the questions determined by the jury, which the testimony is sufficient to sustain, the record shows without contradiction that, before the tax assessor canvassed the district and secured inventories of the property and the values thereof from the respective owners, the board of trustees had met and determined the value at which all the lands in the district should be assessed, arbitrarily placing such values at $12 per acre regardless of the location of the land, the character of the land, or the value of the improvements thereon, and that neither the owners nor the tax assessor fixed the values, but in each instance it was fixed at $12 per acre theretofore arbitrarily set according to some method or scheme of the trustees; that, while the trustees were sitting as a board of equalization, appellant appeared before them and protested the values placed upon its land as compared with the values of the other land in the district, and that the board, after a hearing, reduced plaintiff's land and three or four other tracts to the value of $8.35 per acre, but refused to make any equalization of the values at which the lands in the central and western portion of the district had been assessed; that all the lands in the district were divided into two classes, and one class valued at $8.35 per acre, and the other class at $12 per acre. The findings of the jury establish the fact that the value of the other lands, taken as a whole, was $28 per acre, and the value of appellant's lands was $14 per acre, or one-half the value of practically all the other lands in the district which belonged to the other class.

[1] Appellant, by several assignments, all of which may be considered together, assails as error the action of the trial court in entering judgment for the full amount of the taxes assessed against it, with interest, and foreclosing the tax lien, because the findings of the jury and the record show conclusively that appellant's property was assessed at a greater proportion of its value than the other property in the district, which constituted

a gross inequality of values and an unfair and unjust discrimination against it, which resulted from the scheme or method of determining values.

The Constitution of Texas, art. 8, § 1, provides:

"Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Article 7530, V. S. C. S. (article 7174, R. C. S. 1925), provides, in substance, that each separate parcel of land shall be valued at its true and full value, and that the assessor shall value each tract or lot by itself at such price as he believes it to be fairly worth in money at the time of the assessment.

Article 7504, V. S. C. S. (article 7146, R. C. S. 1925), provides that real estate, for the purpose of taxation, shall be construed to mean the land itself, the buildings, structures, and improvements thereon.

Article 7564, V. S. C. S. (article 7206, R. C. S. 1925), constitutes the commissioners' court of each county a board of equalization for the purpose of equalizing the taxes, and directs:

"That they shall equalize improved lands in three classes, first-class to embrace the better quality of land and improvements, the second-class to embrace the second quality of lands and improvements, and the third-class to embrace lands of but small value or inferior improvements. The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible."

Section 12 of the acts of the Legislature creating the Redwine independent school district (Gammel's Laws of Texas, vol. 20, p. 216) authorizes the trustees to fix the values of the property in the district for taxing purposes, and gives them' all the power of the commissioners' court when sitting as a board of equalization to fix such values.

It is certain that the assessor made no attempt to arrive at the true and full value of each tract of land in the district, and equally certain that the trustees, acting as a board of equalization, made no effort to separate the improved lands so as to embrace the better quality of land and improvements in the first class, the second quality of lands and improvements in the second class, and the third quality of lands with inferior improvements in the third class; nor were the unimproved lands so divided for valuation purposes as to embrace first, second, and third class lands; hence, the values were not ascertained as provided by law, but were determined and fixed arbitrarily by a method or system' which was at complete variance with the provisions of the statutes.

The value of appellant's lands, as determined by the jury, was $14 per acre. It was assessed at a valuation of $8.35 per acre,

or approximately 60 per cent. of its actual cash value. The value of practically all the other lands, as found by the jury, was $28 per acre, and it was assessed at $12 per acre, or approximately 43 per cent. of its actual cash value. Thus, appellant's land was assessed at a value exceeding by almost 17 per cent. the assessed value of the other lands in the district, which required it to pay taxes on a valuation which is one-sixth higher than the valuation which the other tax payers are required to pay on their property in the district.

These facts are sufficient to establish that the taxes on the property in the district were not equal and uniform, but, on the contrary, show appellant was required to pay more in taxes in proportion to the value of its property than a great majority of other owners of property in the district were required to pay in proportion to the value of the property owned by them. This was evidently occasioned by the system or scheme adopted by the trustees before the assessor canvassed the district to assess all the land in the district at the same value, $12 per acre, regardless of its location, character, or improvements. This system or scheme of assessing values was adhered to when the trustees convened as a board of equalization in every particular, except that after a hearing the land in the district was divided into two classes, one of which was assessed at $8.35 per acre and the other at $12 per acre, notwithstanding the testimony shows that the value of the separate tracts or parcels of land varied with the location, fertility, roughness or smoothness, whether grazing or agricultural, and the extent of the cultivation and improvements on the respective tracts.

[2] The language of the Constitution that "Taxes shall be equal and uniform throughout the state," and "All property in the state shall be taxed in proportion to its value," applies to municipal subdivisions as well as to the state for assessing and collecting taxes. City of Austin v. Austin Gas, Light & Coal Co., 7 S. W. 200, 69 Tex. 180.

In Norris v. City of Waco, 57 Tex. 635, Judge Stayton says:

"Taxes are said, within the meaning of the Constitution, to be 'equal and uniform,' when no person nor class of persons in the taxing district, whether a state, county, or other municipal corporation, is taxed at a different rate than are other persons in the same district upon the same value or the same thing, and where the objects of taxation are the same by whomsoever owned, or whatever they be."

[3] The fact that appellant would pay on a valuation less than the full and true value does not make the taxes "equal and uniform," nor its land "taxed in proportion to its value." Langley et al. v. Smith et al., 126 S. W. 660, 59 Tex. Civ. App. 584. To assess the property of one or a few owners at a materially higher percentage of its value than

the percentage of the value at which the property of a great majority of the owners in the district is assessed is unconstitutional, and, especially if done in pursuance of some custom, system, or scheme in which values are not ascertained as provided by law, it is discrimination. Lively v. M., K. & T. Ry. Co., 120 S. W. 852, 102 Tex. 545; City of Houston v. Baker et al. (Tex. Civ. App.) 178 S. W. 820.

[4] Appellees urge that, because the jury found that the trustees, as a board of equalization, acted in good faith and exercised their best judgment, its action in equalizing values is final, and not subject to review by any other tribunal.

In Brown et al. v. First National Bank of Corsicana et al. (Tex. Civ. App.) 175 S. W. 1122, this question is determined adversely to appellees' contention; Judge Talbot holding:

"That appellees' rights cannot be made to turn upon whether the commissioners' court, sitting as a board of equalization, exercised its best judgment in fixing the rate and basis of value of all property in Navarro county, subject to taxation in 1912, seems certain. The question is: Did the action of the court, so sitting, have the effect to deny to appellees the right of equal taxation—equal protection of the Constitution and laws of the state? If so, they were entitled to be relieved from such effect, whether it was the result of the exercise of good or bad judgment. In either event the action of the court resulted in an unjust and forbidden discrimination in the assessment of property for taxation, and it is no answer to the suit of appellees to say that, notwithstanding such result, the action of the board of equalization was based upon its best judgment, and therefore the aggrieved parties have no remedy.

"Nor is the intention with which the acts of the appellants were done of any consequence. 'It is not necessary that the officers in so discriminating should have intended specifically to injure the appellee.' Lively v. Railway Co., supra. So the contention of appellants to the effect that if the commissioners' court, sitting as a board of equalization, acted honestly and in good faith in equalizing the values of property in Navarro county for the year 1912, their act was final, cannot be sustained, and all assignments of error under which such contention is made in any form must be overruled."

For additional authorities in harmony with this holding, see Jayton Independent School District v. Rule-Jayton Cotton Oil Co. (Tex. Civ. App.) 259 S. W. 631; Union Independent School District v. Sawyer (Tex. Civ. App.) 259 S. W. 637; City of Sweetwater et al. v. Biard Development Co. (Tex. Civ. App.) 203 S. W. 801; City of Houston v. Baker (Tex. Civ. App.) 178 S. W. 820; Johnson v. Holland, Tax Collector, 43 S. W. 71, 17 Tex. Civ. App. 210. On these decisions, and the facts disclosed by this record, it is our opinion that the action of the trustees, acting as a board of equalization, was not final, but was subject to review by the courts.

[5] The testimony shows that appellant offered to pay $237.52 to the tax collector, and at the trial tendered said amount into court; but it admits in its brief that under the values as found by the jury its total tax would amount to $278.22; therefore appellees were not required to accept the offer nor the tender in court in full settlement of the taxes. Stuard et al. v. Thompson et al. (Tex. Civ. App.) 251 S. W. 277.

For the reasons discussed, the judgment is reversed, and the cause remanded.